SAMANTHA C. GRANT (SBN 198130)
  scg@msk.com
KIRSTEN E. BASS (SBN 300205)
  keb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants

WAL-MART STORES, INC. and
SAM'S CLUB

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONIER VARGAS, an individual; | CASE NO. 2:16-cv-02921 AB (AJWx) |
| Plaintiff, | Hon. André Birotte, Jr. |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| WAL-MART STORES, INC.; SAM'S CLUB, entity form unknown; MARINA AGUILAR, an individual, and DOES 1 through 50, inclusive. | |
| Defendants. | |

Hearing Date: February 27, 2017
Time: 10:00 a.m.
Location: Courtroom 7B

**[NOTICE OF MOTION AND MOTION; DECLARATION OF ANGELA DEO; DECLARATION OF SAMANTHA C. GRANT; SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]**

Trial Date: May 30, 2017
Case Removed: April 28, 2016

Mitchell
Silberberg &
Knupp LLP

8568959.11

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS ......................................................................2

    A.    Employment Background ..............................................................2

        1.    Wal-Mart's Discrimination & Harassment Prevention
            Policy ...................................................................................2

        2.    Plaintiff's Job Duties ........................................................2

        3.    Wal-Mart's Rest Break and Meal Period Policy .....................3

        4.    Plaintiff's Work Schedule ..................................................4

    B.    Leaves of Absence ........................................................................4

        1.    Plaintiff's 2008 Medical Leave of Absence ..............................4

        2.    Plaintiff's 2012 Medical Leave of Absence ..............................4

            a.    Plaintiff returned to work without restrictions. ...............4

            b.    Plaintiff participated in joking conversations
               regarding his slower pace post-surgery. .........................4

            c.    Plaintiff attended physical therapy and regained his
               mobility by January 2013. ..............................................5

            d.    Plaintiff did not request any workplace
               accommodations. ...........................................................5

    C.    Performance Issues .......................................................................6

        1.    Wal-Mart Register Operator Accountability/Pink Slip
            Procedure & Coaching for Improvement Policy ......................6

        2.    Plaintiff's Cash Variances. ..............................................7

    D.    Termination ...................................................................................7

        1.    Plaintiff's Termination for Poor Performance.........................7

Mitchell
Silberberg &
Knupp LLP

8568959.11

i

**TABLE OF CONTENTS**
**(continued)**

Page

2.   Plaintiff's Final Wage Statement.................................................7

III.   LEGAL STANDARD .........................................................................8

IV.   LEGAL ARGUMENT .........................................................................8

A.   Plaintiff's Claim for Disability Discrimination Under FEHA Fails As A Matter of Law. .........................................................8

1.   Plaintiff cannot establish a prima facie case of disability discrimination. .........................................................9

a.   Plaintiff was not disabled within the meaning of FEHA.........................................................................9

b.   Plaintiff was not qualified to perform the essential cash handling functions of his role................................10

c.   Plaintiff has offered no evidence of a nexus between his termination and his alleged disability.......................11

2.   Wal-Mart has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination................................11

3.   Plaintiff cannot establish pretext. ...................................12

B.   Plaintiff's Claim for Failure to Engage in the Interactive Process is Unfounded..................................................14

1.   No interactive process is required where the employee is unqualified. ...............................................14

2.   The duty to engage in the interactive process was not engaged because Plaintiff did not request an accommodation........................................................15

C.   Plaintiff's Claim for Failure to Provide a Reasonable Accommodation Fails As A Matter of Law........................15

D.   Plaintiff's Claim for Retaliation Fails As A Matter of Law. ..............16

Mitchell
Silberberg &
Knupp LLP

8568959.11

ii

**TABLE OF CONTENTS**
**(continued)**

Page

1.     Plaintiff cannot establish a prima facie case of retaliation. ...... 17

    a.     Plaintiff did not engage in protected activity. ............... 17

2.     Plaintiff cannot establish a causal link between any protected activity and his termination. .................................... 18

E.     Plaintiff's Derivative Claims for Failure to Prevent Discrimination and Retaliation Fail Because His Discrimination and Retaliation Claims Fail. .......................................................................... 19

F.     Plaintiff's Derivative Claim for Wrongful Termination in Violation of Public Policy Also Fails. ........................................ 20

G.     Plaintiff's California Family Rights Act Claim Fails as a Matter of Law. ................................................................................ 20

H.     Plaintiff's Wage & Hour Claims All Fail as a Matter of Law. ........... 21

1.     Plaintiff has no evidence to support his claim for failure to provide meal and rest periods. .................................. 21

2.     Plaintiff has no evidence to support his claim for failure to pay wages pursuant to Labor Code §§ 1194 & 1197. ............. 22

3.     Plaintiff has no evidence to support his claim for failure to pay wages upon discharge pursuant to Labor Code §§ 201-203. .......................................................................... 23

4.     Plaintiff was provided with itemized wage statements in compliance with Labor Code § 226. ........................................ 23

5.     Plaintiff has no evidence to support his claim for unfair competition pursuant to Business & Professions Code § 17200. .......................................................................... 24

I.     Plaintiff Cannot Prove An Entitlement to Punitive Damages. ........... 24

V.     CONCLUSION ........................................................................... 25

Mitchell
Silberberg &
Knupp LLP

8568959.11

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

# <u>TABLE OF AUTHORITIES</u>

<u>**Pages**</u>

### CASES

*Addisu v. Fred Meyer*,
   198 F.3d 1130 (9th Cir. 2000) .......................................................... 8

*Akers v. County of San Diego*,
   95 Cal.App.4th 1441, 116 Cal. Rptr. 2d 602 (2002) ............................ 16, 17, 18

*Alejandro v. ST Micro Elecs., Inc.*,
   129 F. Supp. 3d 898, 907 (N.D. Cal. 2015)......................................... 9

*Aleksick v. 7-Eleven*,
   205 Cal.App.4th 1176 (2012) ............................................................ 24

*Arteaga v. Brink's, Inc.*,
   163 Cal. App. 4th 327 (2008)....................................... 9, 10, 11, 12, 13

*Bermudez v. Office Max*,
   2007 U.S. Dist. LEXIS 35198 (E.D. Cal. May 2, 2007).................................... 10

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal. 4th 1004, 139 Cal. Rptr. 3d 315, 273 P.3d 513 (2012)........................ 21

*Brown v. Fed. Express Corp.*,
   249 F.R.D. 580 (C.D. Cal. 2008)....................................................... 21

*Campbell v. Medtronic MiniMed, Inc.*,
   No. 2:15-CV-08091-RGK-PJW, 2016 U.S. Dist. LEXIS 120929
   (C.D. Cal. Sep. 6, 2016) ............................................... 16, 17, 18, 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................ 8

*Day v. Sears Holdings Corp.*,
   930 F. Supp. 2d 1146 (C.D. Cal. 2013)............................................. 12

*De La Torre v. Am. Red Cross*,
   2013 WL 5573101 (C.D. Cal. Oct. 9, 2013) (Pregerson, J.)............................ 23

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
   642 F.3d 728 (9th Cir. 2011) ........................................................ 8, 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES
## (continued)

**Pages**

*Dickson v. Burke Williams, Inc.*,
   234 Cal. App. 4th 1307 (2015) ........................................................................ 19

*Dudley v. Dept. of Transportation*,
   90 Cal. App. 4th 255 (2001) .......................................................................... 20

*EEOC v. UPS Supply Chain Solutions*,
   620 F.3d 1103 (9th Cir. 2010) ...................................................................... 15

*Escano v. Kindred Healthcare Operating Co.*,
   No. CV 09-04778 DDP, 2013 U.S. Dist. LEXIS 29899 (C.D. Cal.
   Mar. 5, 2013) ................................................................................................ 21

*Faust v. Cal. Portland Cement Co.*,
   150 Cal. App. 4th 864 (2007) ...................................................................... 20

*Green v. State of California*,
   42 Cal.4th 254 (2007) ................................................................................... 10

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (2000) .................................................................................. 12

*Hanson v. Lucky Stores, Inc.*,
   74 Cal. App. 4th 215 (1999) ........................................................................ 15

*Hastings v. Dep't of Corr.*,
   110 Cal. App. 4th 963 (2003) ...................................................................... 10

*Jensen v. Wells Fargo Bank*,
   85 Cal. App. 4th 245 (2000) ........................................................................ 15

*King v. United Parcel Serv., Inc.*,
   152 Cal. App. 4th 426, 60 Cal. Rptr. 3d 359 (2007) ............................... 12, 13

*Lackner v. North*,
   135 Cal. App. 4th 1188 (2006) .................................................................... 24

*Lawler v. Montblanc N. Am.*,
   LLC, 704 F.3d 1235 (9th Cir. 2013) .............................................................. 8

Mitchell
Silberberg &
Knupp LLP

8568959.11

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES
### (continued)

**Pages**

*Lynne Wang v. Chinese Daily News, Inc.*,
    435 F. Supp. 2d 1042 (C.D. Cal. 2006).......................................................21, 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................... 8

*McInteer v. Ashley Distrib. Servs.*,
    40 F. Supp. 3d 1269, 1281 (C.D. Cal. 2014)................................................11, 12

*Morgan v. Regents of Univ. of Cal.*,
    88 Cal. App.4th 52 (Cal. Ct. App. 2000).....................................................13, 14

*Murphy v. Kenneth Cole Productions, Inc.*
    40 Cal. 4th 1094 (2007)...............................................................................23

*Pratt v. Delta Air Lines Inc.*,
    No. 2:14-cv-00815-CAS(JCx), 2015 U.S. Dist. LEXIS 60101
    (C.D. Cal. May 4, 2015)...............................................................................17, 18

*Quinn v. City of L.A.*,
    84 Cal. App. 4th 472 (2000) .......................................................................16

*Rope v. Auto-Chlor Sys. of Washington, Inc.*,
    220 Cal. App. 4th 635, review denied (Jan. 29, 2014)................................17, 18

*Scotch v. Art Inst. of Cal.*,
    173 Cal. App. 4th 986 (2009) .....................................................................19

*Scott v. Phx. Sch., Inc.*,
    175 Cal. App. 4th 702 (2009) .....................................................................24

*Supercuts, Inc.*,
    252 F.R.D. 641, 645 (N.D. Cal. 2008) ........................................................21, 22

*Swonke v. Sprint Inc.*,
    327 F. Supp. 2d 1128 (N.D. Cal. 2004)........................................................14

*Thornhill's Publ'g Co. v. GTE Corp.*,
    594 F.2d 730 (9th Cir. 1979) ......................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**
**(continued)**

**Pages**

*Trulsson v. Cty. of San Joaquin DA's Office,*
  49 F. Supp. 3d 685, 694 (E.D. Cal. 2014) ........................................................... 19

*Villalobos v. TWC Admin. LLC,*
  No. 2:15-cv-02808-R-PLAx, 2016 U.S. Dist. LEXIS 21334 (C.D.
  Cal. Feb. 16, 2016) ........................................................................................... 20

*White v. Ultramar,*
  21 Cal. 4th 563 (1999) ................................................................................. 24, 25

*Wilmarth v. City of Santa Rosa,*
  945 F. Supp. 1271 (N.D. Cal. 1996) ................................................................ 15

*Yanowitz v. L'Oreal USA, Inc.,*
  36 Cal. 4th 1028, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005) ................... 17, 18

**FEDERAL STATUTES**

Fed. R. Civ. P.
  Rule 56 ................................................................................................................ 8
  Rule 56(e) ........................................................................................................... 8

**STATE STATUTES**

Cal. Civ. Code § 3294(a) .................................................................................... 24

Cal. Code Regs. title 2, § 7293.7(a) ................................................................... 10

Cal. Labor Code
  §§ 201-203 ....................................................................................................... 23
  § 226 ................................................................................................................. 23
  § 226(e) ............................................................................................................ 23
  § 226(e)(1) ........................................................................................................ 23
  § 226.7 .............................................................................................................. 21
  § 512 ................................................................................................................. 21
  § 1194 ............................................................................................................... 22
  § 1197 ............................................................................................................... 22

California Business & Professions Code
  § 17200 ............................................................................................................. 24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**
**(continued)**

**Pages**

California Government Code
  § 12926(m) ..................................................................................... 10
  § 12940(h)....................................................................................... 17
  § 12940(k)....................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Mitchell
Silberberg &
Knupp LLP

8568959.11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiff Onier Vargas ("Plaintiff") worked for Wal-Mart as a Tobacco Cashier Associate ("Associate") for over twenty years.  In Fall 2008 and Fall 2012, Plaintiff requested – and was granted – two medical leaves of absence for knee surgery.  These two leaves of absence are the only workplace accommodations requested by Plaintiff during his employment.  Following both procedures, Plaintiff returned to Wal-Mart in his role as a full-time Associate, without medical restrictions and without issue.

One of the essential functions of Plaintiff's Associate role – if not the most important function – was to accurately process customer purchases of tobacco products using the cash register.  Plaintiff failed to perform this function adequately for two-and-a-half years preceding his termination.  On September 14, 2010, Plaintiff received a First Written Warning following eight instances of his cash register accounting being "over" or "short" in a 6-month time period.  On February 13, 2012, Plaintiff received a Second Written Warning following five more instances of his cash register accounting being "over" or "short" in a 6-month time period.  On January 21, 2013, Plaintiff received a Third Written Warning following a cash register accounting overage of $100.  In accordance with Wal-Mart's policies and procedures, Plaintiff was subject to immediate termination should he receive an additional overage or shortage while on his Third Written Warning.  On May 8, 2013, Plaintiff was terminated after his cash register accounting was short by $500.05 on April 9, 2013 and over by $100.01 on April 13, 2013.

Plaintiff has not – and cannot – establish a causal nexus between his October 2012 medical leave of absence and his May 2013 termination.  Plaintiff was granted his requested leave, and returned to his same role without medical

Mitchell
Silberberg &
Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1   restriction.  Further, the evidence clearly indicates that Plaintiff did not seek any

2   accommodations following his return from leave because Plaintiff was no longer

3   disabled.  Finally, Plaintiff regained his mobility following completion of physical

4   therapy in January 2013 – four months before his termination.

5       It is clear upon a review of the record that there are no genuine issues of

6   material fact concerning any of Plaintiff's claims.  As such, summary judgment or

7   summary adjudication of all of the issues before this Court is appropriate.

8   **II.    STATEMENT OF FACTS**

9       **A.    Employment Background**

10      Plaintiff began working for Wal-Mart on January 6, 1994 at the Company's

11  San Fernando, California Sam's Club location.  Undisputed Material Fact

12  "[UDF]"), 1.  During the relevant time period, Plaintiff's immediate supervisor

13  was Marina Aguilar ("Aguilar"), Assistant Manager, his Human Resources

14  Representative was Mina Garcia ("Garcia"), and his Club Manager was Angela

15  Deo ("Deo").  [UDF 2].

16              **1.    Wal-Mart's Discrimination & Harassment Prevention**

17                  **Policy**

18      Plaintiff's employment with Wal-Mart was subject to the Company's

19  Discrimination & Harassment Prevention Policy (the "Prevention Policy").  [UDF

20  3].  The Prevention Policy expressly states that Wal-Mart is "committed to

21  providing an environment that is free of discrimination or harassment based on an

22  individual's status" and "will not tolerate any form of discrimination or harassment

23  in any aspect of [its] business."  [UDF 4].  The Prevention Policy also provides

24  employees with a procedure for reporting unlawful conduct.  [UDF 5].

25              **2.    Plaintiff's Job Duties**

26      Plaintiff was employed as a Tobacco Cashier Associate ("Associate").

27  [UDF 6].  As a Tobacco Cashier Associate, Plaintiff's primary job duties included

28

Mitchell
Silberberg &
Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

stocking shelves, receiving and rotating merchandise, shipping merchandise, and processing customer sales on a cash register in the tobacco cage.  [UDF 7].  Plaintiff was also occasionally required to operate a forklift to move merchandise, return merchandise to the receiving area, conduct price comparisons, and visit small businesses to promote membership with Wal-Mart.  [UDF 8].

### 3.    Wal-Mart's Rest Break and Meal Period Policy

Wal-Mart has a Meal and Rest Period Policy specifically for its California Employees (the "Break Policy").  [UDF 9].  The Break Policy provides that Associates should be provided with two 15-minute, uninterrupted rest breaks and an uninterrupted meal period of at least 30 minutes in duration.  [UDF 9].  The first rest break should take place in the middle of the first four-hour work period; the second rest break should take place in the middle of the second four-hour work period; and the meal period should take place at or before the completion of the fifth hour of work.  [UDF 10].  The Break Policy provides that, if a rest break or meal period is interrupted, the employee should start the clock anew.  [UDF 11].  The Break Policy instructs employees to notify a member of management if a break or meal period is not provided in accordance with the foregoing Break Policy.  [UDF 12].

When a supervisor receives an employee report of a missed break, the supervisor and the employee complete a California Break/Meal Period Exception Worksheet or a California Rest Break or Meal Period Investigation Worksheet (the "Worksheet").  [UDF 13].  Plaintiff was aware of this procedure and, in fact, had previously followed it when he reported missing a meal or a rest period, which resulted in him being appropriately compensated.  [UDF 14].  Plaintiff did not report missing any rest breaks or meal periods during the relevant statutory time period.  [UDF 15].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

#### 4. Plaintiff's Work Schedule

Plaintiff's regular working hours were from 6:00 a.m. until 2:30 p.m., except on Thursdays when he worked from 4:00 a.m. to 12:30 p.m. [UDF 16]. These hours included a 30-minute meal period, resulting in an 8-hour work shift. [UDF 17]. Plaintiff does not recall ever working more than eight hours in a day at any point during his employment with Wal-Mart. [UDF 18].

### B. Leaves of Absence

#### 1. Plaintiff's 2008 Medical Leave of Absence

On or about October 17, 2008, Plaintiff went out on a medical leave of absence ("LOA") to recover from surgery on his right knee. [UDF 19]. Plaintiff returned to work on January 14, 2008 without any work restrictions. [UDF 20].

#### 2. Plaintiff's 2012 Medical Leave of Absence

On or about October 1, 2012, Plaintiff requested a second LOA for a surgery on his left knee. [UDF 21]. Wal-Mart approved Plaintiff's request and he began his leave on or about October 5, 2012; it was approximately six weeks in duration. [UDF 22].

##### a. Plaintiff returned to work without restrictions.

Plaintiff returned to work on or about November 19, 2012 without any work restrictions. [UDF 23].

##### b. Plaintiff participated in joking conversations regarding his slower pace post-surgery.

Plaintiff claims that he walked more slowly in the weeks immediately following his return from surgery. [UDF 24]. Although he claims that customers and co-workers joked about his moving slower, he could not name one customer who did so and could name only one co-worker who did so. [UDF 25]. Plaintiff contends that one of his supervisors, Aguilar, acknowledged his slowness a couple of times in a joking manner by commenting on his speed and asking him to move

Mitchell
Silberberg &
Knupp LLP

8568959.11

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

faster. [UDF 26]. Aguilar made these comments around the time that Plaintiff returned from his LOA in or about November 2012. [UDF 27]. Plaintiff admits that he partook in the joking and that he openly discussed his knee surgery at work. [UDF 28]. Plaintiff did not complain or discuss the joking with anyone at Wal-Mart. [UDF 29]. In fact, Plaintiff did not file a complaint or make a report about any unlawful conduct at any point during his employment with Wal-Mart because, as he concedes, "[he] didn't have anything to report." [UDF 30].

### c.   Plaintiff attended physical therapy and regained his mobility by January 2013.

Other than being careful when he turned and icing his knee after physical activity, the only medical directive given to Plaintiff following his second knee surgery was to attend physical therapy and perform the assigned knee exercises. [UDF 31]. Plaintiff began physical therapy on or about October 17, 2012, approximately two weeks after his knee surgery; Plaintiff completed physical therapy on or about January 16, 2013. [UDF 32]. Physical therapy helped Plaintiff recover his mobility. [UDF 33]. The only residual effects following Plaintiff's surgery was discomfort due to his surgical scar, which his doctor recommended he treat by massaging the area with his thumb. [UDF 34].

### d.   Plaintiff did not request any workplace accommodations.

Plaintiff did not request any additional time off of work following his return to work, nor does he recall any doctor recommending that he take any additional time off to recover. [UDF 35]. Plaintiff selected the times for his physical therapy appointments in consultation with his physical therapists and did not receive any mandates or instructions from Wal-Mart regarding what times he should select for his appointments. [UDF 36].

Mitchell Silberberg & Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff cannot recall any requests he made for an accommodation following his return to work from his second knee surgery.  [UDF 37].  Rather, he claims that, if he asked Wal-Mart for anything at all, it may have been an "informal" comment to Aguilar about using a chair on one occasion.  [UDF 38].  According to Plaintiff "[i]t was just one of those times she stopped by and I was standing by the register that we could have talked about something like that."  [UDF 38].  Plaintiff cannot recall how Aguilar responded because "[Aguilar] and [Plaintiff] talked many times."  [UDF 39].

Plaintiff also acknowledged that he likely used a flatbed to sit on one or two occasions and no one at Wal-Mart raised an issue with it.  [UDF 40].  Plaintiff did not tell any doctor that he required a sitting accommodation, nor did any doctor recommend one.  [UDF 41].  Plaintiff did not tell any doctor or anyone at Wal-Mart that he needed an accommodation to perform his duties.  [UDF 42].

**C.   <u>Performance Issues</u>**

      **1.   Wal-Mart Register Operator Accountability/Pink Slip Procedure & Coaching for Improvement Policy**

The responsibilities and expectations for Associates are detailed in the "Tobacco Cashier" job description.  [UDF 43].  Plaintiff understood that one of his responsibilities as a Tobacco Cashier Associate was to process cash transactions accurately.  [UDF 44].  Wal-Mart's Register Operator Accountability/Pink Slip Procedure ("Cash Handling Policy") and Coaching for Improvement Policy ("Coaching Policy") detail the disciplinary actions that might result should an Associate fail to perform his or her duties competently.  [UDF 45].  Pursuant to the Cash Handling Policy, if an Associate has a register accounting discrepancy of $100 or more, he or she will automatically advance to the highest level of discipline – a Third Written Warning or "Automatic Decision Making Day".  [UDF 46].  Pursuant to the Coaching Policy, if an Associate's failure to perform

Mitchell Silberberg & Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

persists after receipt of a Third Written Warning, the Associate is subject to immediate termination.  [UDF 47].

### 2.   Plaintiff's Cash Variances.

On September 14, 2010, Plaintiff received a First Written Warning following eight instances of his register accounting being "over" or "short" in a 6-month time period (collectively "Cash Variances"); the Cash Variances were less than $100.  [UDF 48].  On February 13, 2012, Plaintiff received a Second Written Warning following five documented Cash Variances within a 6-month time period; again, the Cash Variances were less than $100.  [UDF 49].  On January 21, 2013, Plaintiff received a Third Written Warning following a Cash Variance of $100. [UDF 50].  Pursuant to the Coaching Policy, Plaintiff was subject to immediate termination should he have another Cash Variance while on a Third Written Warning.  [UDF 51].

### D.   **Termination**

### 1.   Plaintiff's Termination for Poor Performance

On May 8, 2013, Plaintiff was terminated while on his Third Written warning after Wal-Mart determined that he had had two additional Cash Variances, both over $100.   [UDF 52].  The first Cash Variance was $500.05 on April 9, 2013; the second Cash Variance was $100.01 on April 13, 2013.  [UDF 53]. Irrespective of his Third Written Warning, Plaintiff was also subject to termination under the Cash Handling Policy due to the large amount – over $100 – of each of the Cash Variances in April.  [UDF 54].

### 2.   Plaintiff's Final Wage Statement

Upon being terminated, Plaintiff received his final wage statement.  [UDF 55].  Plaintiff is unaware of any additional monies being owed or any inaccuracy in his final wage statement.  [UDF 56].

Mitchell
Silberberg &
Knupp LLP

8568959.11

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

## III.   LEGAL STANDARD

A moving party is entitled to summary judgment when the evidence demonstrates that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56.  The moving party satisfies its burden by showing "that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.* at 587.  Further, a genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Finally, the evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory or speculative testimony is insufficient to raise a genuine issue of fact and will not defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## IV.   LEGAL ARGUMENT

### A.   <u>Plaintiff's Claim for Disability Discrimination Under FEHA Fails As A Matter of Law.</u>

To prevail on summary judgment, an employer is "required to show either that (1) plaintiff [can]not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (quoting *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011)). Plaintiff cannot prove actionable discrimination in this case because he cannot establish a prima facie case of discrimination and, even if he could do so, Wal-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Mart has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

### 1. Plaintiff cannot establish a prima facie case of disability discrimination.

To establish a prima facie case for disability discrimination and retaliation Plaintiff must show he: (1) suffered from a disability; (2) was otherwise qualified to do the job; and (3) was subject to an adverse employment action because of the disability. *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344–45 (2008). Here, Plaintiff cannot prove that he suffered from a disability or that he was qualified to perform the essential functions of the Tobacco Cashier Associate position, or that he was subject to an adverse employment action because of his disability.

### a. Plaintiff was not disabled within the meaning of FEHA.

At the time of his termination, Plaintiff was not disabled. Following his October 2012 knee surgery, Plaintiff's doctor released him to work full-time in November 2012 without any medical restrictions. [UDF 21-23]. Plaintiff then attended physical therapy until January 2013, at which time he regained his mobility. [UDF 32-33]. Plaintiff was not terminated until approximately four months after Plaintiff had completed his physical therapy regimen. [UDF 52].

Even if Plaintiff's contention that he walked more slowly in the weeks immediately following his return is taken as true, a slower pace is not a disability entitled to FEHA's protections. *See Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 907 (N.D. Cal. 2015) ("The definition of physical disability under FEHA includes '[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss' that affects one of several body systems and *limits a major life activity*.'" In any event, by January 2013, he had recovered his mobility. [UDF 33].

Although Plaintiff may have had some residual occasional pain from his surgical scar that would not rise to the level of a "disability" under FEHA. *See Arteaga*, 163 Cal. App. 4th at 328 (holding that a terminated employee's disability discrimination claim failed because the employee's symptoms of pain and numbness in his extremities did not make it difficult for him to achieve the major life activity of working and, as such, did not constitute a physical disability under FEHA); Cal. Government Code § 12926(m).  Accordingly, Plaintiff cannot prove he was disabled at the time of his termination.

### b.   Plaintiff was not qualified to perform the essential cash handling functions of his role.

In order to establish the second prima facie element for these claims, Plaintiff must prove that he was able to perform the essential functions of his job, with or without reasonable accommodation. *Hastings v. Dep't of Corr.*, 110 Cal. App. 4th 963, 971 (2003).  The law is clear that Plaintiff bears the burden of proving that he was qualified to perform the job. *Green v. State of California*, 42 Cal.4th 254, 258 (2007); *see also* Cal. Code Regs. title 2, § 7293.7(a) (explicitly placing the burden of establishing qualification on the employee).

Plaintiff cannot sustain his burden of showing he was qualified for his position.  One of the essential requirements of the Tobacco Cashier Associate role was accurately processing customer transactions using a cash register.  Plaintiff's repeated and documented Cash Variances before and after his knee surgery demonstrate that he could not perform this essential function of his job with or without a reasonable accommodation.  [UDF 48-54].  Indeed, Plaintiff's written warnings before and after his 2012 knee surgery make it impossible for Plaintiff to establish that he was performing his job competently. *See Bermudez v. Office Max*, 2007 U.S. Dist. LEXIS 35198, *4-5 (E.D. Cal. May 2, 2007) (plaintiff was not competently performing where he received several disciplinary warnings).

Mitchell Silberberg & Knupp LLP

8568959.11

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1    Moreover, Plaintiff concedes that he did not tell anyone, including his doctor, that

2    he had any medical condition that was affecting his ability to do his job.  [UDF

3    42].  Because Plaintiff could not perform the essential functions of his position,

4    with or without an accommodation, Plaintiff cannot establish a prima facie case of

5    disability discrimination.

6                    **c.      Plaintiff has offered no evidence of a nexus between**

7                              **his termination and his alleged disability.**

8           In order to establish the third prima facie element for discrimination,

9    Plaintiff must establish that he was subjected to adverse employment action

10   because of his disability.  *McInteer v. Ashley Distrib. Servs.*, 40 F. Supp. 3d 1269,

11   1281 (C.D. Cal. 2014).  Discrimination occurs when an employer "treats some

12   people less favorably than others because of their [disability]."  *Arteaga*, 163 Cal.

13   App. 4th at 342.  "[T]he plaintiff must prove the ultimate fact that the defendant

14   engaged in intentional discrimination.  *Id.* at 342-43 (holding that "the ultimate

15   burden of persuading the trier of fact that the defendant engaged in intentional

16   discrimination remains at all times with the plaintiff.").

17          Plaintiff concedes that he is unaware of any other employee who was on a

18   Third Written Warning and had a Cash Variance of more than $100.00, as was the

19   case with him, whose employment was not terminated.  [UDF 57].  Plaintiff's

20   termination was clearly warranted in light of his multiple written warnings, which

21   he began to accumulate before he went on leave in 2012.  As such, Plaintiff's first

22   cause of action for disability discrimination must fail.

23                    **2.      Wal-Mart has articulated a legitimate, nondiscriminatory**

24                              **reason for Plaintiff's termination.**

25          Even if Plaintiff could establish a prima facie case for disability

26   discrimination (which he cannot), his claim would still fail because Wal-Mart has

27   articulated a legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's

28

Mitchell
Silberberg &
Knupp LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1    termination – he was on a Third Written Warning and then had a cash shortage of

2    $500 and a cash overage of $100 in April 2013, which violated the written Register

3    Operator Accountability/Pink Slip Procedure.  [UDF 43-54].  Courts have

4    recognized that violation of company policies is a legitimate, nondiscriminatory

5    reason for terminating an employee.  *Day v. Sears Holdings Corp*., 930 F. Supp. 2d

6    1146, 1170 (C.D. Cal. 2013).

7        Wal-Mart has made the requisite showing of a legitimate reason for

8    Plaintiff's discharge.  *See King v. United Parcel Serv., Inc*., 152 Cal. App. 4th 426,

9    433, 60 Cal. Rptr. 3d 359 (2007).  Defendant's "burden is one of production, not

10   persuasion, thereby involving no credibility assessment." *See Day v. Sears*

11   *Holdings Corp*., 930 F. Supp. 2d 1146, 1169 (C.D. Cal. 2013); *see also McInteer*,

12   40 F. Supp. 3d at 1284.

13               **3.      Plaintiff cannot establish pretext.**

14       Because Wal-Mart has offered a legitimate, non-discriminatory, non-

15   retaliatory justification for Plaintiff's termination, "the presumption of

16   discrimination disappears."  *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 356 (2000).

17   Accordingly, it is Plaintiff's ultimate burden of persuasion to show that Wal-

18   Mart's proffered reasons are a mere pretext.  *Guz*, 24 Cal.4th at 356.  Further,

19   "[t]he burden of persuasion remains with the plaintiff even in the face of evidence

20   that the employer's proffered reasons are pretextual:

21           'The ultimate question is whether the employer intentionally
22           discriminated, and proof that "the employer's proffered reason is
         unpersuasive, or even obviously contrived, does not necessarily
23           establish that the plaintiff's proffered reason … is correct." … In other
         words, "[i]t is not enough … to disbelieve the employer; the factfinder
24           must believe the plaintiff's explanation of intentional discrimination."
25
     *Arteaga*, 163 Cal. App. 4th at 343.
26
27       If the employer presents admissible evidence either that one or more of

28   plaintiff's prima facie elements is lacking, or that the adverse employment action

Mitchell
Silberberg &
Knupp LLP

8568959.11

12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1   was based on legitimate, nondiscriminatory factors, the employer will be entitled to

2   summary judgment unless the plaintiff produces admissible evidence which raises

3   a triable issue of fact material to the defendant's showing. *Id.* at 344.

4        A plaintiff may show pretext (1) directly "by persuading the court that a

5   discriminatory reason more likely motivated the employer," or (2) indirectly "by

6   showing that the employer's proffered explanation is unworthy of credence."

7   *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App.4th 52, 68 (Cal. Ct. App. 2000).

8   Circumstantial evidence must be "specific" and "substantial" to create a triable

9   issue. *Id.* at 69. A plaintiff's subjective belief that the employer discriminated

10  against him does not create a triable issue of material fact. *King,* 152 Cal. App. 4th

11  at 433 (2007). Nor do uncorroborated or self-serving declarations. *Id.* In short,

12  the plaintiff's evidence "must relate to the motivation of the decision makers to

13  prove, by non-speculative evidence, an actual causal link between prohibited

14  motivation and termination." *Id.* at 433–34.

15       The plaintiff must "demonstrate such weaknesses, implausibilities,

16  inconsistencies, incoherencies, or contradictions in the employer's proffered

17  legitimate reasons for its action that a reasonable factfinder could rationally find

18  them unworthy of credence . . . and hence infer that the employer did not act for

19  the . . . non-discriminatory reasons." *Lucent Techs., Inc.*, 642 F.3d 728 at 746;

20  *King*, 152 Cal. App. 4th at 433 (The discharged employee seeking to avert

21  summary judgment "must produce substantial responsive evidence to show that

22  [the employer's] ostensible motive was pretextual; that is, that a discriminatory

23  reason more likely motivated the employer or that the employer's explanation

24  is unworthy of credence."); *Morgan*, 88 Cal. App. 4th at 75; ("The plaintiff must

25  demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or

26  contradictions in the employer's proffered legitimate reasons for its action that a

27  reasonable factfinder could rationally find them unworthy of credence").

28

Mitchell
Silberberg &
Knupp LLP

8568959.11

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Here, Plaintiff had documented performance problems and was on a Third Written Warning for his Cash Variances. [UDF 48-54]. Wal-Mart's next disciplinary step after a Third Written Warning is termination. [UDF 45-47]. Moreover, because of the amount of his variances in April 2013, either one of them could have triggered his termination without regard for his Third Written Warning status, pursuant to Company policy. *Id.* Plaintiff cannot point to anyone who received more favorable treatment nor can he point to any display of discriminatory animus by any of his superiors. Accordingly, Plaintiff has no evidence of pretext and his claim for disability discrimination fails.

**B.** **Plaintiff's Claim for Failure to Engage in the Interactive Process is Unfounded.**

    **1.** **No interactive process is required where the employee is unqualified.**

The duty to engage in the interactive process does not arise in a vacuum—its purpose is to find a reasonable accommodation. Thus, if no reasonable accommodation was possible, there can be no liability for failing to engage in the interactive process. *See Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128, 1137 (N.D. Cal. 2004) ("The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile.")

In this case, Plaintiff's second claim for failure to engage in the interactive process under FEHA fails as a matter of law for the same reasons as his disability discrimination claim: Plaintiff was not disabled and could not competently perform in his position with or without a reasonable accommodation. Plaintiff cannot identify a reasonable accommodation that would have allowed him to perform the essential functions of the job competently. Since Plaintiff cannot sustain his burden to show that he was qualified for his role, and he cannot identify a reasonable accommodation that would have enabled him to perform the

Mitchell Silberberg & Knupp LLP

8568959.11

14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1  requirements of this position, his claims for failure to engage in the interactive

2  process fail as a matter of law.

3          **2.**      **The duty to engage in the interactive process was not**

4                 **engaged because Plaintiff did not request an**

5                 **accommodation.**

6        Plaintiff's second claim further fails as a matter of law because he cannot

7  establish that he requested a reasonable accommodation.  *EEOC v. UPS Supply*

8  *Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (an employer's duty to

9  engage in the interactive process is triggered by the employee's request for a

10  reasonable accommodation).  Here, Plaintiff returned to work without any medical

11  restrictions, did not tell his doctor that he needed an accommodation to perform his

12  duties, and did not tell his human resources representative that he needed an

13  accommodation to perform his duties competently.  Moreover, no doctor told

14  Plaintiff that he should seek any accommodation.  Therefore, there was no need for

15  Wal-Mart to engage in the interactive process.

16          **C.**      <u>**Plaintiff's Claim for Failure to Provide a Reasonable**</u>

17             <u>**Accommodation Fails As A Matter of Law.**</u>

18        To establish a prima facie case for failure to accommodate under FEHA –

19  Plaintiff's third claim – he must show that: (1) he was disabled; (2) he was

20  qualified to perform the essential functions of the position he sought, with or

21  without accommodation; and (3) Wal-Mart failed to reasonably accommodate his

22  disability.  *See Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 255-56 (2000).

23  An employer is not required to accommodate an employee who cannot perform the

24  essential functions of the job with or without a reasonable accommodation.  *See*

25  *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271, 1279 (N.D. Cal. 1996); *see*

26  *also Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 226 (1999) ("[A]n

27  employer is not required to offer an accommodation that is likely to be futile

28

Mitchell
Silberberg &
Knupp LLP

8568959.11

15

1   because, even with accommodation, the employee could not safely and efficiently

2   perform the essential functions of the job."); *see also Quinn v. City of L.A.*, 84 Cal.

3   App. 4th 472, 475 (2000).

4         Here, Plaintiff cannot meet any of the three requisite elements.  As discussed

5   in detail in Section IV.A.1. above, Plaintiff cannot establish he was disabled or that

6   he was qualified to perform the cash handling function required of a Tobacco

7   Cashier Associate.  As such, he cannot meet the first or second element of this

8   claim.  Further, Plaintiff cannot prove that Wal-Mart failed to accommodate his

9   purported disability.  Plaintiff requested a medical leave for his knee surgery on

10  October 1, 2012, which was granted on October 5, 2012.  [UDF 21-22].  His doctor

11  released him to return to work without restrictions on November 19, 2012.  [UDF

12  23].  Wal-Mart reinstated him to his full-time position as a Tobacco Cashier

13  Associate upon his return to work.  After he returned from work, no doctor

14  recommended any further medical leave nor did Plaintiff request any further

15  medical leave. [UDF 33].

16        Moreover, Plaintiff did not require or request any accommodations after his

17  2012 medical leave in order to perform his job competently.  [UDF 37-42].

18  Although he contends he and Supervisor Aguilar joked around a couple of times

19  about his being slow and needing a chair, that does not constitute an

20  accommodation request, let alone a denial of one.  Further, Plaintiff testified that

21  even prior to his surgery when he felt the need to sit, he would use a flatbed, which

22  did not raise any concerns with his superiors. [UDF 40].  Therefore, his failure to

23  accommodate claim fails.

24        **D.    Plaintiff's Claim for Retaliation Fails As A Matter of Law.**

25        California employment retaliation claims are analyzed under a burden-

26  shifting framework. *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1453, 116

27  Cal. Rptr. 2d 602 (2002); *Campbell v. Medtronic MiniMed, Inc.*, No. 2:15-CV-

28

Mitchell
Silberberg &
Knupp LLP

8568959.11

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

08091-RGK-PJW, 2016 U.S. Dist. LEXIS 120929, at *10-11 (C.D. Cal. Sep. 6, 2016).  Plaintiff has the initial burden to set out a prima facie case of retaliation. *Campbell*, 2016 U.S. Dist. LEXIS at *10-11. If Plaintiff successfully makes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for its actions.  *Id*. at 1453. If Wal-Mart meets its burden, Plaintiff must then show that Defendant's stated reason is untrue or merely pretextual.  *Id*.  Here, Plaintiff's claim fails because he cannot establish a prima facie case of retaliation, Wal-Mart has articulated a non-retaliatory reason for its actions, and Plaintiff has no evidence of pretext.

### 1.     Plaintiff cannot establish a prima facie case of retaliation.

"To establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005); *Pratt v. Delta Air Lines Inc.*, No. 2:14-cv-00815-CAS(JCx), 2015 U.S. Dist. LEXIS 60101, at *36 (C.D. Cal. May 4, 2015).  "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, non-retaliatory reason for the adverse employment action." *Yanowitz*, 36 Cal. 4th at 1042.  "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id*.

### a.     Plaintiff did not engage in protected activity.

"Protected conduct under section 12940(h) may take many forms." *Rope v. Auto-Chlor Sys. of Washington, Inc.*, 220 Cal. App. 4th 635, 651, review denied, (Jan. 29, 2014).  "Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity, such activity **must oppose**

Mitchell
Silberberg &
Knupp LLP

8568959.11

17

1  **activity** the employee reasonably believes constitutes unlawful discrimination, and

2  complaints about personal grievances or vague or conclusory remarks that fail to

3  put an employer on notice as to what conduct it should investigate will not suffice

4  to establish protected conduct." *Yanowitz*, 36 Cal. 4th at 1047 (emphasis added);

5  *Pratt* , 2015 U.S. Dist. LEXIS 60101 at *38.  California courts have found:

> "[N]o support in the regulations or case law for the proposition that a
> mere request—or even repeated requests—for an accommodation,
> without more, constitutes a protected activity sufficient to support a
> claim for retaliation in violation of FEHA. On the contrary, case law
> and FEHA's implementing regulations are uniformly premised on the
> principle that the nature of activities protected by subdivision (h)
> demonstrate *some degree of opposition to or protest of* the employer's
> conduct or practices based on the employee's reasonable belief that the
> employer's action or practice is unlawful.

13  *Id.* at *38-39 (quoting *Rope*, 220 Cal. App. 4th at 652 (2013).  Plaintiff

14  concedes that he never made any complaint about what he believed to be unlawful

15  activity.  [UDF 30].  Moreover, he concedes that he was unaware of any unlawful

16  activity and had "nothing to report" when he worked at Wal-Mart.  *Id.*  Therefore,

17  he cannot prove that he made a complaint about what he reasonably believed was a

18  complaint of unlawful conduct, such that it would be protected activity under

19  FEHA.  Based on the foregoing, it is clear that Plaintiff cannot prove he engaged in

20  "protected activity."

21          **2.      Plaintiff cannot establish a causal link between any**

22                  **protected activity and his termination.**

23          In order to establish a prima facie case of retaliation, Plaintiff must

24  demonstrate that his leave of absence caused him to be terminated.  *See Akers v.*

25  *Cty. of San Diego*, 95 Cal. App. 4th at 1452; *Campbell*, 2016 U.S. Dist. LEXIS at

26  *14.  Instead, Plaintiff merely alleges that a causal nexus exists because of the

27  temporal and sequential relationship between his leave and his termination.  While

28

Mitchell
Silberberg &
Knupp LLP

8568959.11

18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

temporal proximity may in certain cases be enough to create an inference of causation, that is clearly not the case here.  Plaintiff returned to work full-time without restrictions and testified that he had regained his mobility in January 2013 – four months before his termination.  [UDF 32-33].  The mere fact that Plaintiff was terminated at some point after he returned from leave cannot satisfy Plaintiff's burden of showing a causal link between the two events.  *Id.*

Without showing a causal link between the protected activity and the adverse employment action, there is an absence of evidence as a matter of law as to Plaintiff's first retaliation claim.

**E.** **Plaintiff's Derivative Claims for Failure to Prevent Discrimination and Retaliation Fail Because His Discrimination and Retaliation Claims Fail.**

Actionable discrimination and retaliation are a necessary prerequisite to Plaintiff's fifth cause of action for failure to prevent discrimination and retaliation in violation of FEHA.  *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1318 (2015) (holding there cannot be a claim for failure to take reasonable steps necessary to prevent discrimination if actionable discrimination has not been found); *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1021 (2009) ("An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination…").  Because Plaintiff cannot show that he was subjected to unlawful discrimination or retaliation his fifth claim fails as a matter of law.  *Trulsson v. Cty. of San Joaquin DA's Office*, 49 F. Supp. 3d 685, 694 (E.D. Cal. 2014) ("to establish a claim for failure to prevent retaliation, a plaintiff must first establish the underlying retaliation.").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

**F.**      **Plaintiff's Derivative Claim for Wrongful Termination in Violation of Public Policy Also Fails.**

Because Plaintiff's first and fourth claims for discrimination and retaliation fail, so too must Plaintiff's twelfth claim for wrongful termination in violation of public policy also fail. *Villalobos v. TWC Admin. LLC*, No. 2:15-cv-02808-R-PLAx, 2016 U.S. Dist. LEXIS 21334, at *12 (C.D. Cal. Feb. 16, 2016) ("Because summary judgment is proper on Plaintiff's discrimination claims for the reasons shown above, it necessarily follows that Plaintiff cannot establish his derivative wrongful termination claims."); *see Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007) (noting viability of wrongful termination claim "necessarily" connected to viability of underlying claims).

**G.**      **Plaintiff's California Family Rights Act Claim Fails as a Matter of Law.**

To prevail on a cause of action for violation of the CFRA, Plaintiff must prove (1) he was eligible to take CFRA leave; (1) he exercised his right to take leave for a qualifying CFRA purpose; and (3) he suffered an adverse employment action because of his exercise of the right to CFRA leave. *See Dudley v. Dept. of Transportation*, 90 Cal. App. 4th 255, 261 (2001) (emphasis added). Plaintiff cannot meet his burden.

Here, Plaintiff cannot meet any of the elements of this claim. Although Plaintiff alleges he required additional leave after returning from medical leave on or about November 19, 2012, Plaintiff testified that no doctor told him he required any additional leave after he returned to work in November 2012, he did not tell any doctor that he needed any such leave, and he did not request any such additional leave. [UDF 35]. Because Plaintiff was not entitled to leave pursuant to CFRA and never requested leave, he could not have suffered any adverse

Mitchell Silberberg & Knupp LLP

8568959.11

20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1  employment action as a result of anything associated with CFRA or any request for

2  leave under CFRA.  Therefore, his CFRA claim fails.[1]

3       **H.**     **Plaintiff's Wage & Hour Claims All Fail as a Matter of Law.**

4         **1.**     **Plaintiff has no evidence to support his claim for failure to**

5             **provide meal and rest periods.**

6      Cal. Lab. Code §§ 226.7 and 512 require employers to provide meal and rest

7  periods to its employees.  Under California law, no employee shall have a work

8  period of more than five hours without a meal period.  Unless the employee is

9  relieved of all duty during a 30 minute meal period, the meal period shall be

10  counted as time worked.  *Lynne Wang v. Chinese Daily News, Inc.*, 435 F. Supp.

11  2d 1042, 1046 (C.D. Cal. 2006).  California law requires that employers "provide a

12  first meal period after no more than five hours of work . . . ." *Brinker Rest. Corp. v.*

13  *Superior Court*, 53 Cal. 4th 1004, 1049, 139 Cal. Rptr. 3d 315, 273 P.3d 513

14  (2012).  In *Brinker*, the California Supreme Court held that "an employer must

15  relieve the employee of all duty for the designated period, but need not ensure that

16  the employee does no work." *Id*. at 1034. The meal period requirement is

17  "satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) is free to

18  leave the premises, and (3) is relieved of all duty for the entire period." *Id*. at 1036;

19  *Escano v. Kindred Healthcare Operating Co*., No. CV 09-04778 DDP (CTx), 2013

20  U.S. Dist. LEXIS 29899, at *21-22 (C.D. Cal. Mar. 5, 2013).

21      Several district courts have previously held that California labor regulations

22  are "consistent with an [employer's] obligation to provide a meal break, rather than

23  to ensure that employees cease working during that time." *Brown v. Fed. Express*

24  *Corp.,* 249 F.R.D. 580, 585 (C.D. Cal. 2008); *see also Supercuts, Inc.*, 252 F.R.D.

---

[1] With respect to his 2012 medical leave, Wal-Mart reinstated him to his position as a Tobacco Cashier Associate upon his return to work on or about November 19, 2012.

Mitchell Silberberg & Knupp LLP

8568959.11

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

641, 645 (N.D. Cal. 2008) ("The structure of the statute and the Wage Order demonstrate that  the waiver applies to the employer's obligation to 'provide' a meal break, not to the employee's decision to take a meal break…The Court does not interpret the waiver language to mean that an employer must ensure that an employee actually take[s] a meal period made available").

Plaintiff has failed to delineate the manner in which Wal-Mart "failed to provide" rest and meal breaks.  As was discussed, *supra* II.A.3, Wal-Mart's Break Policy is compliant with all local, state, and federal laws.  [UDF 9-11].  Wal-Mart provided that Plaintiff had a built in 30-minute lunch break during each of Plaintiff's shifts  Further, Wal-Mart's Break Policy provides for a total of 10 *more* minutes than is required under the law.  *Id.*  At no point during the relevant statutory period did Plaintiff report that he was denied or missed any rest breaks or meal periods.  [UDF 15].

## 2.     Plaintiff has no evidence to support his claim for failure to pay wages pursuant to Labor Code §§ 1194 & 1197.

Where an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the failure to pay overtime is not a violation of the law.  *Chinese Daily News*, Inc., 435 F. Supp. 2d at 1046.

Here, Plaintiff doesn't recall ever working more than eight hours on any of his shifts let alone working more than eight hours without being paid.  [UDF 18].  As such, Plaintiff's claim for failure to pay all wages owed must fail.

Mitchell Silberberg & Knupp LLP

8568959.11

22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

**3.      Plaintiff has no evidence to support his claim for failure to pay wages upon discharge pursuant to Labor Code §§ 201-203.**

Plaintiff has no reason to believe that he was not paid all of his wages on discharge and cannot point to any element of his final wage statement that he believes to be inaccurate.  [UDF 56].  Therefore, in light of Plaintiff's failure to offer any evidence in support of this cause of action, this claim fails.

**4.      Plaintiff was provided with itemized wage statements in compliance with Labor Code § 226.**

Wage statement claims are "indisputably governed by a one-year statute of limitations."  *Murphy v. Kenneth Cole Productions, Inc.* 40 Cal. 4th 1094, 1118, fn. 16 (2007).  Plaintiff's employment was terminated on May 8, 2013.  Plaintiff filed his lawsuit on May 6, 2015.  Therefore, Plaintiff's wage statements claim is barred by the one-year statute of limitations.  In any event, there is no evidence that Plaintiff's wage statements did not comply with the California Labor Code.  Further, Plaintiff may recover only for Wal-Mart's "knowing and intentional" failure to provide itemized wage statements and he has no evidence of any such knowing and intentional failure.  *See* Cal. Lab. Code § 226(e)(1) (employer liable only for "knowing and intentional failure" to provide accurate wage statements).  Finally, Plaintiff has no evidence that he suffered an actual injury from the purported wage statement violations.  *See* Labor Code § 226(e); *De La Torre v. Am. Red Cross*, 2013 WL 5573101, at **5-6 (C.D. Cal. Oct. 9, 2013) (Pregerson, J.) (granting motion to dismiss because the plaintiff "has not alleged actual injury resulting from the inaccuracy on her wage statement as required by Section 226.").

Mitchell
Silberberg &
Knupp LLP

8568959.11

23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

**5.    Plaintiff has no evidence to support his claim for unfair competition pursuant to Business & Professions Code § 17200.**

Plaintiff's eleventh claim for unfair competition pursuant to California Business and Professions Code §17200 is entirely derivative of his other wage and hour claims; as such, it too fails. *Aleksick v. 7-Eleven*, 205 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative [unfair competition law] claim also fails.").

## I.    Plaintiff Cannot Prove An Entitlement to Punitive Damages.

To recover punitive damages, Plaintiff must show by clear and convincing evidence that Wal-Mart engaged in oppressive, malicious or fraudulent conduct against him.  Cal. Civ. Code § 3294(a).  Both oppression and malice require Plaintiff to prove that Wal-Mart engaged in despicable conduct, which connotes conduct that is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Lackner v. North*, 135 Cal. App. 4th 1188, 1210 (2006).  "Such conduct has been described as having the character of outrage frequently associated with crime." *Scott v. Phx. Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009). Here, the undisputed facts demonstrate that Plaintiff was failing to perform his duties in a satisfactory manner and, consequently, Wal-Mart took appropriate action.  Plaintiff has no evidence that the actions were taken with oppression and/or malice.  *Id.* ("mere carelessness or ignorance of the defendant does not justify …punitive damages").

Even if Plaintiff could prove that specific acts of fraud, oppression, or malice had occurred, which he certainly cannot, he would still be required to prove that they were committed, authorized, or ratified by a director, officer, or "managing agent" at Wal-Mart. *White v. Ultramar*, 21 Cal. 4th 563, 566-67 (1999).  Managing agents include "only those corporate employees who exercise

24

Mitchell
Silberberg &
Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

1 | substantial independent authority and judgment in their corporate decision-making
2 | so that their decisions ultimately determine corporate policy. *Id.*  Having hiring
3 | and firing authority is not the proper standard for determining who is a managing
4 | agent of a corporation. *Id.* at 577.  There is no evidence that the decision to
5 | terminate Plaintiff's employment or any of the conduct about which Plaintiff
6 | complains was committed, authorized, or ratified by a director, officer, or
7 | "managing agent" at Wal-Mart.  Accordingly, Plaintiff's claim for punitive
8 | damages fails as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, Defendants Wal-Mart Stores, Inc. and Sam's Club respectfully request that the Court grant summary judgment against all of Plaintiff's twelve claims for relief alleged in his Complaint herein, or grant partial summary judgment as the Court determines.

DATED: January 30, 2017                MITCHELL SILBERBERG & KNUPP LLP


By:/s/ *Samantha C. Grant*
　　Samantha C. Grant
　　Attorneys for Defendants
　　WAL-MART STORES, INC. and
　　SAM'S CLUB

Mitchell
Silberberg &
Knupp LLP

8568959.11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**